JERMY ELLIOTT and )
SHAENA ELLIOTT, )
                )
    Plaintiffs, )
                )
v. )      No. 1:26-cv-2-CLC-MJD
                )
OFFICER MATTHEW JONES, Badge #309, )
in his individual capacity, et al., )
                )
    Defendants. )

## ORDER

Before the Court is the Joint Motion for Protective Order [Doc. 29 ("Motion")] filed by Defendant City of Collegedale, Tennessee, along with the individual officer Defendants Matthew Jones, Edwin Rojas, Nevin Recchia, and John Robbs (together, "Defendants").[1] Defendants' proposed protective order is attached to the Motion [Doc. 29-1 ("Protective Order")]. Plaintiffs Shaena and Jermy Elliott (together, "Plaintiffs"), who are proceeding pro se, filed a response in opposition along with their own proposed protective order [Doc. 31; Doc. 31-1], and Defendants filed a reply [Doc. 34]. This matter is now ripe.

## I.    BACKGROUND

This case concerns Mr. Elliott's November 2023 arrest and seizure of his firearm. According to Plaintiffs' amended complaint, Ms. Elliott, then eight months pregnant, was driving home one morning when another driver (Michael Kreger) aggressively passed her using the shoulder lane, and then "violently brake-checked" her "multiple times," which forced her to

---

[1] The record does not reflect whether Defendant Charlene Cook has been served. No attorney has entered an appearance on her behalf, and she has not filed an answer or joined in the Motion.

repeatedly slam on her own brakes [Doc. 9 at Page ID # 29]. Ms. Elliott called 911 and followed Mr. Kreger until police dispatch instructed her to "keep her distance." [*Id.*]. When Ms. Elliott turned and began driving home, Mr. Kreger started to follow her. Ms. Elliott then called her husband, Mr. Elliott, and asked him to meet her outside of their home when she arrived. Once Ms. Elliott arrived at home, Mr. Kreger drove away. Mr. Elliott then "briefly drove through the neighborhood solely to determine whether Mr. Kreger remained in the area." [*Id.*].

In the meantime, Mr. Kreger called 911 and "falsely" reported that Mr. Elliott "fir[ed] a gun at him." [*Id.* at Page ID # 30]. As Mr. Elliott was driving home, he was stopped by the individual officer Defendants, who surrounded his car with their patrol cars, and drew their service weapons, aiming them at Mr. Elliott. Mr. Elliott complied with the officers' commands, but he was arrested (later charged with a felony) and had his own weapon seized. All charges against Mr. Elliott were eventually dismissed and expunged [*id.* at Page ID # 38]. Mr. Elliott's gun was not returned to him until August 2025.

## II.    DEFENDANTS' MOTION

Defendants seek entry of the Protective Order [Doc. 29-1] to govern the exchange of confidential information during the discovery phase of this case. For cause, Defendants contend that Tennessee law prohibits the release of certain types of records related to expunged criminal charges, and that Plaintiffs have served discovery requests implicating such records. Defendants contend that "[r]elease of such records without a protective order could expose the Defendants in this case to penalties pursuant to T.C.A. § 40-32-104," including mandatory fines and jail time [Doc. 29 at Page ID # 141; *see also* Tenn. Code Ann. § 40-32-102(e)(2)]. Plaintiffs lodge various objections to Defendants' Protective Order and submit their own proposed version [Doc. 30-1] as

an exhibit to their response. The parties evidently conferred and attempted to agree on terms, without success. [*See* Doc. 27].

The Court has reviewed Defendants' Protective Order and respectfully finds Plaintiffs' objections are misplaced. As set forth in the Memorandum and Order Regarding Sealing Confidential Information [Doc. 5 ("Sealing Order")], the Court regularly signs "blanket" protective orders like the one Defendants propose, which permit the parties to designate information and documents as confidential during the discovery phase of a case, and which set parameters for how such confidential information can be used or shared during discovery. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("Discovery concerns the parties' exchange of information that might or might not be relevant to their case. Secrecy is fine at the discovery stage, before the material enters the judicial record. Thus, a district court may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of 'good cause[.]' Fed. R. Civ. P. 26(c)(1). These orders are often blanket in nature, and allow the parties to determine in the first instance whether particular materials fall within the order's protection." (other internal citation omitted)).

Defendants cite to Tennessee statutes relating to expunction of criminal records as part of their argument that there is "good cause" to enter the Protective Order, as required by Federal Rule of Civil Procedure 26(c). Contrary to Plaintiffs' suggestion, the Protective Order does not pre-designate any particular discovery as confidential. Rather, it allows the parties to designate *any* discovery as confidential so long as the party has a good faith basis for the designation. This could include, for example, discoverable medical or financial information, as well as sensitive law enforcement records that Defendants claim in good faith are maintained as confidential. Moreover, Defendants' Protective Order includes a process for one party to challenge another party's

confidentiality designation [Doc. 29-1 at Page ID # 148–149, ¶ 17]. It also specifically excludes any information that is otherwise publicly available, that was legally disclosed by a third party, or that was previously developed, known, or used by a party prior to this lawsuit [*id.* at ¶ 16]. Moreover, as Defendants point out in their reply, the Protective Order does not define or limit the scope of discovery in this case.

In addition, as the Court interprets it, nothing about the Protective Order prohibits a party from relying on, citing to, or submitting any discovery materials designated as confidential in connection with (1) a motion filed for the Court's consideration; (2) at a hearing; or (3) at trial. The Motion and the opening paragraph of the Protective Order discuss discovery, and paragraph seven expressly states, *inter alia*, that the Protective Order "shall not restrict in any manner the right of any party to offer or use as evidence at trial of this action any of the documents subject to this Order[.]" [Doc. 29-1 at Page ID # 145, ¶ 7]. Of course, to the extent evidence may be used at trial, it may also be used in any pretrial motion or hearing.[2]

And nothing about the Protective Order authorizes any party to *file* information—whether designated confidential in discovery or not—under seal in the official record of this case. As the Sealing Order explains, there is "a stark difference" between protective orders "entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on the other." [Doc. 5 at Page ID # 17 (quoting *Shane Grp.*, 825 F.3d at 305)]. The Court has a "'strong presumption in favor of openness' as to court records," which presumption can only be overcome by "the most compelling reasons[.]" *Shane Grp.*, 825 F.3d at 305. In other words, the Protective Order has no bearing on whether a party may, for example, file a motion for summary judgment, for the Court to consider and adjudicate, under seal. The

---

[2] The Court will nevertheless require a change to paragraph seven, as set forth below.

standards, procedures, and requirements for filing motions (or briefs, exhibits, etc.) in the record under seal are set forth in the Sealing Order [Doc. 5] and in the Court's Electronic Case Filing ("ECF") Rules and Procedures.[3]

The Court has not specifically addressed the substance of Plaintiffs' proposed order because it is not properly before the Court. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by *motion*." (emphasis added)). To the extent Plaintiffs raise other objections to the Protective Order that are not addressed by the foregoing discussion, such objections are respectfully overruled. The Court finds, in its discretion, there is good cause to enter the Protective Order. *See Garton v. Crouch*, No. 3:21-cv-00338, 2023 WL 2287637, at *3 (M.D. Tenn. Feb. 28, 2023) (overruling objection to entry of protective order; finding state statute which made investigative files confidential sufficient to show "good cause" under Rule 26(c)).

Nevertheless, the Court declines to sign and enter the Protective Order at this time. The Protective Order references a "Nondisclosure Statement in the form of that attached to this Order" [Doc. 29-1 at Page ID # 147, ¶ 12], but no such Nondisclosure Statement is attached. In the interest of maintaining a clear record, the Court will require Defendants to re-file the Protective Order with the referenced Nondisclosure Statement attached. Furthermore, to avoid any confusion regarding paragraph seven, the Court will require Defendants to include the phrase "or in any motion or hearing," as follows:

> 7. Notwithstanding the foregoing provisions, this Order shall not restrict in any manner the right of any party to offer or use as evidence at trial, or in any motion or hearing of this action, any of the documents subject to this Order and nothing contained herein shall be construed as a waiver of any objection which might be raised as to the admissibility of any evidentiary material.

---

[3] The Court's ECF Rules and Procedures are available at:
https://www.tned.uscourts.gov/sites/tned/files/ecf_rules_procedures.pdf.

5

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion [Doc. 29]. The Court **ORDERS** Defendants to re-file the Protective Order, with the referenced Nondisclosure Statement attached and the changes to paragraph seven set forth above, within **FOURTEEN DAYS** of entry of this Memorandum and Order. No other changes to the Protective Order are authorized.

SO ORDERED.

ENTER:

/s/ _____

MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE

6